**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**T.P. and S.P.,**

          **Plaintiffs,**

**v.**                                                    **Case No: 6:14-cv-1897-Orl-22GJK6**

**WALT DISNEY PARKS AND**
**RESORTS U.S., INC.,**

          **Defendant.**

---

**ORDER**

This cause comes before the Court on Defendant's, Walt Disney Parks and Resorts U.S., Inc. ("Defendant"), Motion for Summary Judgment filed on June 1, 2016. (Doc. No. 55). Plaintiff, T.P. by and through S.P. as Next Friend, Parent, and Natural Guardian ("Plaintiff"), filed a Response in Opposition to Defendant's Motion on July 1, 2016. (Doc. No. 69). Defendant filed its Reply on July 18, 2016. (Doc. No. 74). For the following reasons, this Court will grant Defendant's Motion.

**I.  BACKGROUND**

Plaintiff is a resident of Los Angeles County, California living with autism, severe obsessive compulsive disorder, attention deficit hyperactivity disorder, and is subject to anxiety attacks. (Doc. No. 1 ¶¶ 70 and 73) (Complaint). He is generally in the care of his mother ("S.P."). (*Id*. at ¶ 72). She brought this action on his behalf. (*Id*.). Plaintiff must experience amusement parks in a specific order and disruptions to his planned routine tend to result in him having a meltdown. (*Id*. at ¶ 77). Plaintiff also cannot wait more than a few minutes to enter an attraction. (*Id*. at ¶ 78). While waiting, he experiences anxiety, aggression toward S.P., and echolalia (saying certain phrases repeatedly). He furthermore cannot understand the concept of visiting an attraction

and being prohibited from riding it until a future time.  (*Id*. at ¶ 79).

Defendant is one of the world's most popular amusement parks.  (Doc. No. 55 p. 23).  Until October 9, 2013, Defendant would issue a Guest Assistance Card ("GAC") to certain disabled guests at its parks.  (*Id*. at p. 4).  A GAC allowed these guests and their party nearly unlimited access to rides through alternative "backdoor entrances" or "Fastpass"[1] lines.  (*Id*.).

Defendant, however, abandoned the GAC system because of alleged abuse by both guests that needed GACs and those that did not.  (*Id*. at pp. 4-5).  The most common way guests purportedly abused the former GAC system was by requesting the accommodation with no need for it altogether.  (*Id*. at p. 5).  Individuals were also creating counterfeit GACs, posting Craigslist advertisements offering unauthorized tours guided by GAC holders, and selling unexpired GACs online.  (*Id*.).

On October 9, 2013, the Disney Disability Access Service ("DAS") was adopted to replace the GAC system.  (*Id*. at 7).  Guests needing accommodations for a cognitive disability at Defendant's parks are to obtain a DAS card from its City Hall in Disneyland or its Chamber of Commerce at California Adventure upon arrival.  (*Id*.).  DAS affords guests with disabilities such as autism the ability to "virtually wait" for attractions without standing in lines.  (*Id*.).  A guest using DAS arrives at an attraction, presents the card, and receives a return time.  (*Id*.)  This can be done for the duration of their visit.  (*Id*.).  The virtual wait using DAS is the posted time for the attraction minus ten minutes.  (*Id*.).  DAS cardholders thus have the opportunity to "avail themselves of the many other attractions throughout the park—other rides, shows, attractions, concerts, characters, restaurants, and stores" until their return time.  (*Id*.).  In addition to DAS,

---

[1]     Fastpass lines typically have shorter waits because guests in these lines receive designated return times to a ride, which essentially saves their place in line without having to wait there physically.  (Doc. No. 55 p. 4).

some guests receive a number of "readmission passes" permitting them to enter the Fastpass line for any attraction without having to stand in line or wait virtually.  (*Id*. at p. 8).

Plaintiff's family visited Defendant's parks on October 20, 3013.  (Doc. No. 1 ¶ 81).  Shortly after, S.P. sent an email to Defendant explaining hardships she and Plaintiff experienced while using DAS.  (*Id*.).  Since DAS has been implemented, Plaintiff has visited Defendant's parks six times.  (*Id*. at ¶ 82).  His most recent trip (as of the date he filed the Complaint) was February 17, 2014 in which DAS did not accommodate him.  (*Id*.).  Therefore, Plaintiff and his family allege that they are discouraged and deterred from the full use and enjoyment of Defendant's parks.  (*Id*. at ¶ 83).  As a result, Plaintiff requests injunctive relief requiring Defendant to modify DAS.  (*Id*. at ¶ 87).

## II.  <u>LEGAL STANDARD</u>

Granting a summary judgment motion is proper if the moving party "shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  A dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Hairston v. Gainesville Sun Pub. Co*., 9 F.3d 913, 918 (11th Cir. 1993).

A grant or denial of summary judgment hinges on whether there is a triable issue.  Such issue exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 249.  However, the Court must grant a motion if "the evidence . . . is so one-sided that one party must prevail as a matter of law."  *Id*. at 251-52.  In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor."  *Id*. at 255 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1316 (11th Cir. 2009).

## III.  DISCUSSION

As an initial matter, Plaintiff claims that the Complaint alleges a failure to accommodate, disparate treatment (intentional discrimination), and a disparate impact.  Defendant, however, argues that it asserts only a failure to accommodate.

The parties' discord on what the issues are stems from Count I in the Complaint, the only count pertaining to the Americans with Disabilities Act ("ADA").  Plaintiff broadly alleges a cause of action under 42 U.S.C. § 12131 *et seq*.[2]  A close reading of the Complaint nonetheless shows that only one issue is in dispute: the ADA's specific prohibition for the failure to accommodate, §12182(b)(2)(A)(ii), as referenced at ¶ 11.  Count I provides facts describing Plaintiff's experience with Defendant's accommodations.  (Doc. No. 1 ¶¶ 69-87).  Though the Complaint mentions the ADA's general prohibition against discrimination, it lacks discernible allegations regarding denial of participation, participation in an unequal benefit, or a separate benefit.  42. U.S.C. §12182(b)(l)(A)(i)-(iii).[3]  Furthermore, Count I makes no identifiable claims of disparate treatment or disparate impact.  Instead, Count I only alleges that Defendant's accommodations are

---

[2]      As Plaintiff's counsel has previously been cautioned by this Court, "[a]uthorities almost universally condemn the use of '*et seq*.' in statutory citation."  *Santarlas v. Atchley*, No. 8:15–cv–374–T–23TBM, 2015 WL 2452301, at *2 n.3 (M.D. Fla. May 21, 2015).  "[T]he use of *et seq*. is poor form . . . . Cite the complete reference instead: find the ending point, and name it.").  *Id*. (quoting Bryan A. Garner, *The Redbook: A Manual on Legal Style*, Rule 6.3(d), at 122 (3d ed.).

[3]      This is further highlighted by Plaintiff not attempting to argue this in response to Defendant's Motion.  Moreover, it is telling that the parties in a related case—involving the same counsel for both parties and a nearly identical complaint—agreed that that the only issue was the failure to accommodate pursuant to 42 U.S.C. §12182(b)(2)(A)(ii)).  *A.L. v. Walt Disney Parks and Resorts, U.S., Inc*., No. 6:14-cv-1544, slip op. at 5-6 (M.D. Fla. Apr. 28, 2016).

insufficient.  Based on these three theories that Plaintiff purports are applicable, Plaintiff has only made allegations for a failure to accommodate.

Thus, Plaintiff's arguments of disparate treatment and disparate impact are now raised for the first time.  Such tactic is impermissible.  *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  Plaintiff's proper course of action was to move for leave to amend the Complaint.  *See id*.  The deadline to do so, however, has passed.

Even if Plaintiff's Complaint is construed to allege disparate treatment and disparate impact, Plaintiff has not carried the initial burden of satisfying a prima facie case for either.  Proving disparate treatment requires Plaintiff to show that a motivating factor behind Defendant implementing DAS was to impose an adverse effect on individuals with Plaintiff's disability.  *See Vill. of Arlington Heights v. Metro. Housing Dev. Corp.,* 429 U.S. 252, 265–66 (1977).  However, Plaintiff states that "Disney's entire goal was to eliminate its prior system [GAC], for business reasons."  (Doc. No. 69 p. 11).

Furthermore, "[a] disparate impact case is one in which a facially neutral practice impacts more harshly on one group of people than on others."  *Mayberry v. Von Valtier*, 843 F. Supp. 1160, 1164–65 (E.D. Mich. 1994).  Defendant's "mantra" for an "equal wait time for all" is just that—a mantra.  To the extent it is viewed otherwise, Plaintiff acknowledges, as the Court elaborates *infra*, that the ADA is intended to ensure that disabled patrons of public accommodations are afforded a like experience of those that are not disabled to the extent feasible.  (Doc. No. 69 p. 13).  Disabled or not, virtually no one visits Defendant's parks and accesses its attractions without having to wait. Therefore, the real issue is DAS, which is not facially neutral.  It applies specifically to those with

disabilities, not all of Defendant's guests.  This precludes Plaintiff from establishing a disparate impact.

A. *Public Accommodations Must Provide Disabled Individuals a Like or Similar Benefit as Nondisabled Individuals*

As discussed, the only legal issue at hand is Defendant's alleged failure to accommodate Plaintiff by implementing DAS and discontinuing GACs.  Congress enacted the ADA specifically to protect individuals with mental and physical impairments from societal discrimination and exclusion.  *See generally* 42 U.S.C. § 12101(a)(2).  This was based on its finding, amongst other things, that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem."  *Id*.; *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75 (2001).  Such discrimination includes "outright intentional exclusion as well as the failure to make modifications to existing facilities and practices."  *Id*. at 675 (citing 42 U.S.C. § 12101(a)(5)) (internal quotation marks omitted).

The ADA accordingly prohibits discrimination by private entities providing certain amenities to the public.  Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  Myriad entities, including amusement parks, are deemed public accommodations by the ADA.  *Id*. at § 12181(7)(I).  The statute also lists specific prohibitions.  There is only one prohibition at issue here:

> [F]ailure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods,     services,     facilities,     privileges,     advantages,     or

> accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii).

Pursuant to this prohibition, the parties disagree over the extent of the accommodations Defendant is required to provide.[4]   The *Martin* Court noted that § 12182(b)(2)(A)(ii) "contemplates three inquiries: whether the requested modification is 'reasonable,' whether it is 'necessary' for the disabled individual, and whether it would 'fundamentally alter the nature'" of the accommodation.  532 U.S. at 683 n.38.  Therefore, a plaintiff must show that he requested a modification and that such modification is reasonable "in the run of cases."  *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997).   A defendant can then offer rebuttal evidence to the reasonableness of the request but the burden of proof on this issue remains with the plaintiff.  *Id*.  If the plaintiff satisfies the burden of showing that the requested accommodation is reasonable and necessary, the modification must be made unless the defendant proves it would fundamentally alter the nature of the public accommodation.  *See Johnson*, 115 F.3d at 1058-60; *Larsen v. Carnival Corp*., 242 F. Supp. 2d 1333, 1342-43 (S.D. Fla. 2003).  Assessing whether a request works a fundamental alteration goes hand-in-hand with determining its reasonableness. *See id*.  Courts have considered "the effectiveness or feasibility of the proposed modification and whether it imposes undue costs or administrative burdens on the defendant" in making this

---

[4]       The parties do not dispute whether Plaintiff is disabled.  Under the ADA, a disability is defined three ways: "(1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)-(C).  The statute's regulations note that "it should easily be concluded that . . . autism substantially limits brain function."  29 C.F.R. § 1630.2(j)(3)(iii).  Plaintiff's disabled status is therefore not an issue.

determination.  *Id.* (citing *DeBord v. Bd. of Educ. of the Ferguson–Florissant Sch. Dist.*, 126 F.3d 1102, 1106 (8th Cir. 1997); *Staron v. McDonald's Corp.,* 51 F.3d 353, 356 (2d Cir. 1995)).

Courts have used the "full and equal enjoyment" language in § 12182(a) to guide the "necessary" inquiry in § 12182(b)(2)(A)(ii).  *Martin* states that an accommodation is necessary if it is beyond the individual's capacity to access a public accommodation without it.  532 U.S. at 682.  Though this is telling regarding an accommodation's necessity, it was dicta.[5]  Accordingly, courts have interpreted the "full and equal enjoyment" clause, in the context of the necessary requirement, to mean that Congress intended for all individuals to have an opportunity to experience an equal benefit from public accommodations to the extent it is feasible.  *Argenyi v. Creighton Univ.*, 703 F.3d 441, 450-51 (8th Cir. 2013) ("Congress require[s] public accommodations . . . to furnish reasonable . . . services so that all individuals have an equal opportunity to gain 'a like' or 'equal' benefit."); *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012) ("Public accommodations must start by considering how their facilities are used by nondisabled guests and then take reasonable steps to provide disabled guests with a like experience."); *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012) ("the proper inquiry [in determining if an accommodation was provided where necessary] is whether the auxiliary aid that a hospital provided to its hearing-impaired patient gave that patient an equal opportunity to benefit from the hospital's treatment.").  In sum, a key inquiry in determining that a requested accommodation is necessary is whether a disabled individual requires it to receive a benefit like that of a nondisabled person.

---

[5]     The petitioner conceded that the accommodation was reasonable and necessary, and thus the only remaining inquiry was whether it was a fundamental alteration.  *Martin*, 532 U.S. 683 n.38.

Plaintiff also brings a claim under of California's Unruh Act ("Unruh Act"), Cal. Civ. Code § 51(b), the state's civil rights statute. The Unruh Act provides that "violation of the right of any individual under the federal Americans with Disabilities Act of 1990 . . . shall also constitute a violation of this section § 51." *Id* at § 51(f).  Like the ADA, California law requires a plaintiff suing for a failure to accommodate to prove that their requested accommodation is necessary and reasonable. *Baughman v. Walt Disney World Co.*, 217 Cal. App. 4th 1438, 1446-47 (Cal. Ct. App. 2013).  Therefore, the Court's disposition of Plaintiff's ADA claim simultaneously decides his Unruh Act claim.

### B.  The Parties' Arguments

Defendant primarily argues that Plaintiff has not met his burden because an accommodation beyond DAS is not necessary as DAS affords him access to the rides at its parks. (Doc. No. 55 p. 15).  Defendant also contends that if the Court finds that reverting to the GAC system is reasonable and necessary, it would nonetheless fundamentally alter its operations based on the risk of abuse and an overall adverse impact on the wait times experienced by all other guests. (*Id*. at p. 21).  Defendant maintains that these same arguments show that Plaintiff does not have a claim under the Unruh Act.  (*Id*. at p. 25).  Defendant further argues that Plaintiff lacks standing because T.P. stated that DAS works for Plaintiff.  (*Id*. at p. 26).

Plaintiff counters Defendant's Motion with six main arguments.  First, Defendant's conduct amounts to disparate treatment or alternatively creates a disparate impact.  (Doc. No. 69 p. 10).  Second, the reasonableness inquiry is fact-intensive and not fit for resolution on summary judgment.  (*Id*. at p. 13).  Third, the requested accommodation is necessary because Plaintiff's need for routine is not a preference, it is instead a biologically driven mechanism that cannot be disrupted.  (*Id*. at p. 14).  Fourth, Defendant has not shown that the requested accommodation will fundamentally alter its operations because it has provided a similar accommodation for the last

twenty years. (*Id.* at p. 15). Then, Plaintiff argues that the Unruh Act provides broader relief than the ADA regarding actual, statutory, and punitive damages. (*Id.* at p. 20). Lastly, Plaintiff argues that he has standing based on deterrence from visiting Defendant's parks alone. (*Id.* at p. 21). Plaintiff's disparate treatment and disparate impact arguments have already been addressed and are impermissible.

Therefore, based on the remaining arguments identified by each party, there are four issues to be considered by this Court:

1. Whether Plaintiff's requested modification is necessary to afford him access to Defendant's parks;

2. Whether Plaintiff's requested modification is reasonable;

3. Whether Plaintiff's requested modification would fundamentally alter the services provided by Defendant; and

4. Whether Plaintiff has standing to pursue his claim.

The subsequent analysis covers issues one and four only. Even if Plaintiff has standing to sue, the Court determines that the requested accommodation is not necessary. Therefore, discussion on the reasonableness of Plaintiff's request and whether it is a fundamental alteration to Defendant's operations is not needed.

### C. *Plaintiff's Requested Accommodation Is Not Necessary*

Revising DAS is not necessary for Plaintiff to have equal access to Defendant's parks. This is because (1) Defendant provided Plaintiff an opportunity to gain a like benefit from its parks that is enjoyed by nondisabled individuals; (2) Plaintiff can wait for a sufficient amount of time to access attractions without following a routine; and (3) DAS is an existing means to equal access. The Court assesses the "necessary" inquiry first because a showing that Plaintiff did not need the accommodation obviates further discussion regardless if it is reasonable. *Martin*, 532 U.S. at 682.

**1.   Defendant afforded Plaintiff an experience like that of nondisabled guests**

Plaintiff was given an opportunity to experience Defendant's attractions in a similar manner as guests that do not need accommodations.  In *Baughman*, Defendant in this case was sued by a guest with limb girdle muscular dystrophy which made it difficult for her to walk or stand.  685 F.3d at 1131.  As part of its "necessary" inquiry into the plaintiff's requested accommodation, the Ninth Circuit highlighted the importance of considering the way nondisabled persons experienced Defendant's park and then assessing if the public accommodation took reasonable steps to afford a similar experience.  *Id*. at 1135.  In the present case, nondisabled guests visit Defendant's parks for rides and attractions that most of them have to wait in line for more than an hour to experience.  (Doc. No. 55 p. 23).  Comparing this to Plaintiff's experience, DAS and readmission passes allow Plaintiff to access those same rides in a fraction of the time.  (*Id*. at p. 19).  The plaintiff in *Baughman* had difficulty standing and walking; Plaintiff here alleges that he cannot wait to access attractions.  Having trouble walking or standing could create a different experience from nondisabled guests when viewing certain attractions or transitioning on and off of rides.  However, nondisabled guests will inevitably have to wait to experience the attractions at Defendant's parks regardless of the order they choose to visit them.  Not only will nondisabled guests have to wait, most of them will have to stand in line.  Plaintiff can wait for attractions from anywhere in Defendant's parks from the time he arrives until whenever he decides to leave.  While doing so, Plaintiff can visit other attractions with shorter waits until his return times for attractions with longer waits.  Thus, DAS and readmission passes afford Plaintiff a similar, or better, experience as those not needing accommodation.

**2.   Plaintiff can wait long enough to access Defendant's attractions and does not need to follow a routine**

The crux of Plaintiff's action is that he cannot wait idly to experience attractions and his

specific routine cannot be disrupted.  However, DAS accommodates these needs to the extent for him to have equal access.  Plaintiff does not have to stand in line while waiting to access an attraction.  Instead, he can experience other attractions in between waiting for attractions with longer waits, preventing him from being idle.

S.P. conceded that Plaintiff could wait in lines for up to twenty-five minutes.  (Doc. No. 55 p. 19).  Additionally, S.P. stated Plaintiff's routine changes as the day progresses, particularly once he knows that there is not enough time to ride everything.  (*Id*. p. 11).  He has even deviated from his alleged routine without having a meltdown when a ride on his list was closed down.  (*Id*.).  In any event, the ADA does not require Defendant to accommodate Plaintiff's routine because "preference—standing alone—is not essential to accessing Disney's Park."  *Ault v. Walt Disney World Co* No. 6:07–cv–1785–Orl–31KRS, 2009 WL 3242028, at *7 (M.D. Fla. Oct. 6, 2009), *vacated and remanded on other grounds*, 405 F. App'x 401, 2010 WL 5078088 (11th Cir. Dec. 14, 2010).

Furthermore, Plaintiff has demonstrated his ability to defer gratification for hours through traveling by car around California and out of the state.[6]  The gratification in traveling is, for the most part, reaching the desired destination.  The time spent traveling in these instances is much more than Plaintiff's conceded ability to wait for twenty minutes—gratification from those trips was anything but instant.  Plaintiff argues that traveling does not require idle waits because electronics and media are available.  However, Plaintiff does not have to wait idly at Defendant's parks either because he can visit other attractions while waiting for return times.  Therefore, Plaintiff has access to the attractions because he can wait for the amount of time required to

---

[6]     Plaintiff has been on road trips lasting up to four and a half hours to Las Vegas, Nevada, a two-hour drive to San Diego, California, and an hour and a half to Carlsbad, California.  (Doc. No. 55 p. 12).

experience them.  Thus, using DAS is not beyond Plaintiff's capacity.  *Martin*, 532 U.S. at 682.

### 3.  DAS and readmission passes are existing means that afford equal access

Finally, Plaintiff's requested modification is not necessary because of the existing accommodations to access the attractions at the park.  Defendant cites a host of cases where federal courts have deemed an individual's request for accommodation unnecessary because accommodations were already in place that provided access.[7]  Plaintiff's case is no different.  As noted, DAS and readmission passes afford Plaintiff access to the attractions at Defendant's parks.  Based on these facts, a reasonable juror could not find that Plaintiff's requested accommodation is necessary.  Consequently, even if Plaintiff had standing, which he does not as discussed *infra* III. D., Plaintiff failed to satisfy an essential element of his case.  *Celotex*, 477 U.S. at 322-23. Discussion of the facts as they pertain to reasonableness and the fundamental alteration defense is unnecessary.  *Id*.

### D.  Plaintiff's Standing

There are two issues regarding standing: (1) Plaintiff's alleged injury from his visits and (2) the risk of future injury pursuant to his claim for injunctive relief.  Regarding the risk of future

---

[7]      *See Logan v. Am. Contract Bridge League*, 173 F. App'x 113 (3d Cir. Mar. 9, 2006) (holding that a vision-impaired bridge player was not entitled to use a special deck of cards because alternate accommodations were available); *Murphy v. Bridger Bowl*, 150 F. App'x 661 (9th Cir. Oct. 5, 2005) (holding that allowing a companion to accompany an individual with a cognitive disability on a ski bike was not necessary to improve her skills because there were alternative methods available); *Coleman v. Phoenix Art Museum*, No. CV 08–1833–PHX–JAT, 2009 WL 1097540 (D. Ariz. Apr. 22, 2009) (holding that the plaintiff failed to meet his burden of showing that his own hip chair device was necessary to accommodate his disability when the museum offered to provide two different kinds of wheelchairs), *aff'd* 372 F. App'x 793 (9th Cir. 2010); *Dryer v. Flower Hosp.*, 383 F. Supp. 2d 934 (N.D. Ohio 2005) (holding that the plaintiff's requested modification of the hospital's policy prohibiting visitors from using its oxygen ports was not necessary because plaintiff was allowed to bring her own oxygen tank into the hospital); *Larsen*, 242 F. Supp. at 1344 (holding that plaintiff's Title III claim was insufficient because he could not establish that it was necessary for plaintiffs to carry on, rather than check in a breathing machine used while sleeping to participate fully in a cruise).

injury, Plaintiff is not being denied access to Defendant's parks. This is because DAS and readmission passes create a like experience for Plaintiff that is enjoyed by nondisabled guests. Injunctive relief is not proper and further analysis of the risk of future injury is not needed based on this fact.

Plaintiff's previous visits, nonetheless, must be assessed under the three, bedrock elements of standing. These are "(1) 'injury-in-fact'; (2) 'a causal connection between the asserted injury-in-fact and the challenged action of the defendant'; and (3) 'that the injury will be redressed by a favorable decision.'" *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).

In general, a motion for summary judgment is not the appropriate means for deciding jurisdictional issues. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007) (treating the district court's grant for summary judgment regarding subject matter jurisdiction as a Federal Rules of Civil Procedure Rule 12(b)(1) motion to dismiss). However, a court can review a standing challenge on summary judgment if it is based on evidentiary support in the record. *Clapper v. Amnesty Int'l. USA*, 133 S. Ct. 1138, 1148-49 (2013) ("[T]he party invoking federal jurisdiction bears the burden of establishing standing—and, at the summary judgment stage, such a party can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts.") (internal quotations omitted). As discussed throughout this Order, Defendant has supported its standing argument through record evidence.

S.P. admitted that DAS worked for Plaintiff and that he had a good experience at Defendant's parked on his October 20, 2013 visit. (Doc. No. 55 p. 10). Therefore, he has not established a cognizable, legal injury-in-fact under the ADA. Therefore, Defendant's Motion will be granted. However, even if Plaintiff had standing, Plaintiff's requested accommodation is not

necessary.

## IV.  CONCLUSION

Therefore, based on the foregoing, it is **ORDERED** as follows:

1.  Defendant's Motion for Summary Judgment filed on June 1, 2016 (Doc. No. 55) is **GRANTED**.

2.  The Clerk is directed to enter judgment providing that Plaintiff shall recover nothing on his claims and that Defendant shall recover costs from Plaintiff.

3.  Additionally, any pending motions filed by the parties are **DENIED** as moot.

4.  The Clerk is directed to **CLOSE** this file.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on September 22, 2016.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties
Magistrate Judge Kelly